## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TYREE MCCLELLAN, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-17-3307 |
| THOMAS MONYEI, *et al.*,[1] | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Tyree McClellan filed this civil rights action alleging that he was assaulted by a correctional officer and suffered various deprivations following the assault. ECF No. 4.[2] Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 27, and a Memorandum in Support, ECF No. 27-1. Plaintiff filed a Motion to Strike, ECF No. 32, and also filed an Opposition to Defendants' Motion, ECF 34. These motions are now ripe for review. The Court finds a hearing in these matters unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Plaintiff's Motion to Strike is DENIED, and Defendants' dispositive Motion, construed as a Motion for Summary Judgment, is DENIED as to Defendant Monyei and GRANTED as to the remaining Defendants. I will order the appointment of counsel for Plaintiff for the limited purpose of representing Plaintiff during the discovery and dispositive motions (if any) stages of litigation, but if Plaintiff's claim against Monyei survives summary judgment,

---

[1] The Clerk is directed to amend the spelling of Defendants Monyei and Kpakiwa's names.

[2] This action was docketed on November 8, 2017, following receipt of correspondence from Plaintiff, which detailed the assault and aftermath. ECF No. 1. Upon the Court's instruction, Plaintiff filed an Amended Complaint, which substantially incorporated the allegations made in the correspondence. ECF No. 4. The Amended Complaint shall be treated as the operative complaint.

representation may extend to representing Plaintiff at trial.

## BACKGROUND

### Plaintiff's Claims and Sworn Opposition

Plaintiff's unsworn Complaint and Amended Complaint predominately concern a fight that took place between Plaintiff and Officer Monyei on May 20, 2017, while Plaintiff was a pretrial detainee at the Maryland Reception, Diagnostic, and Classification Center (MRDCC). On May 20, Plaintiff and his cellmate were instructed to switch cells because their cell door was not closing properly. Am. Compl. 3. Officer Olaleye accused Plaintiff and his cellmate of tampering with the lock. *Id.* Plaintiff claims that Olaleye "show[ed] animosity and dislike towards [him]," antagonized Plaintiff and his cellmate, and threatened Plaintiff with serious bodily harm. *Id.* However, Plaintiff does not allege that Olaleye physically touched him. Thereafter, Defendant Monyei came to Plaintiff's cell and also began antagonizing Plaintiff and asking Plaintiff "if [he] was trying to fight." *Id.*

Plaintiff and his cellmate begin complying with the officers' instructions to move to a new cell. *Id.* At some point, Plaintiff left his original cell and then returned to that cell to pack his property. *Id.* According to Plaintiff, after re-entering the cell, he heard the door shut behind him and turned around, when Officer Monyei punched Plaintiff twice with a closed fist. *Id.* at 3-4. Plaintiff alleges that Monyei

> then grabbed me trying to restrain me, being in fear that something was going to happen I broke loose from his grasp, in which he threw several more punches in which cause my head to hit the cell hook used for hanging up clothes, I began to bleed immediately, I feel to the ground and grabbed on to Officer T. Monyai because in which [sic] I was balled up in the fetal position he was still throwing massive blows to my ribs and elbows to my back.

*Id.* at 4. Olaleye then opened the cell door and Sergeant Lewis removed Monyei from Plaintiff. *Id.* In his Opposition, Plaintiff clarifies that Officer Olaleye was responsible for closing and

2

locking the cell door and failed to promptly call for staff assistance, in contravention of institutional policy. Pl.'s Opp'n 2-3.

Plaintiff reports that following the assault he was bleeding profusely. Compl. 4. He states that Captain Braxton restrained him, escorted him to the medical department, and denied Plaintiff's request to be transported to an outside medical facility. *Id.* Plaintiff also makes assertions that Braxton was "being very hostile" toward him during this time and refused to let Plaintiff write a statement about the incident.

After Plaintiff was medically screened, he was placed in segregation, where Sergeant Kpakiwa was supposed to "make sure [Plaintiff] got [a] shower," but failed to do so. *Id.* However, Plaintiff acknowledges that he received a shower the following morning. Plaintiff alleges that he also told Kpakiwa that he was "trying to write statement and that [he] need[ed] to go back to medical [because his] head was in pain and needed bandage[;] bandaid didn't help stop the bleeding," but Kpakiwa never gave him a statement form. *Id.* He further states that unspecified individuals (Plaintiff merely says "they") failed to "keep a check on [him]" or clean/bandage his wound, so Plaintiff was forced to use a towel on the wound. *Id.*

Unlike Plaintiff's Complaint, Plaintiff's Opposition to Defendants' Motion is sworn. Pl.'s Opp'n 4. The majority of the Opposition presents legal conclusions, such as that Defendants violated the Division of Corrections' (DOC) use of force manual. *Id.* at 1-4. For example, Plaintiff contends that Olaleye should have called for staff assistance before closing the door on Plaintiff and Monyei, and that Monyei and Olaleye should have called their supervisor as soon as Plaintiff became non-compliant with their orders. *Id.* at 2-3. Further, Plaintiff contends that DOC policy states that any inmate who receives a head injury is supposed to taken to the hospital for further evaluation, yet Plaintiff was not. *Id.* at 4. Plaintiff also alleges (in conclusory fashion), for the

first time in his Opposition, that Kpakiwa should be held liable under principles of supervisory liability because he "was well aware of the situation, but chose to ignore the police and procedure of the use of force manual, and told [Olaleye and Monyei] to handle the situation." *Id.* at 4. However, none of Plaintiff's filings explain why he believes Kpakiwa had knowledge of the force that Monyei was going to use.

As for facts within his personal knowledge, Plaintiff asserts in his Opposition that he "clearly showed that [he] was not a threat to the officer[]s Mr. Olaleye or Mr. Monyai" and that Plaintiff's cellmate "did not pose [a] threat to [Monyai and Olaleye], he was only showing concern for [Plaintiff] who was being assaulted by Officer Monyai inside the cell." *Id.* at 3-4.

### Defendants' Evidence

Defendants, through sworn affidavits, describe the incident differently. Monyei asserts that after receiving a radio call from Officer Olaleye requesting assistance in moving Plaintiff to another cell,

> I arrived at the cell and directed Mr. McClellan and cellmate to pack and move cells. After I gave several orders to move, the cellmate moved while Mr. McClellan refused. Initially, Mr. McClellan briefly came out of the cell then returned and refused to leave. I entered the cell to assist the Plaintiff with his move. As soon as I entered the cell, Mr. McClellan struck me in my right eye and then in my mouth. Officer Olaleye shut the door to prevent the escalation of the fight and curtail the cellmate from joining the fight. We continued to tussle until additional officers arrived and could secure the cellmate and Mr. McClellan.

Monyei Aff., ECF No. 27-6. Olaleye's affidavit echoes Monyei's, stating:

> As Officer Monyei entered the cell, the Plaintiff struck him. I shut the door to prevent the escalation of the fight and curtail the cellmate from joining the fight. I radioed for officer assistance to help detain the cellmate so I could open the cell door and assist Officer Monyei. The cellmate became animate[d] and blocked my access to the cell door. I attempted to push the cellmate away to unlock the door and gain access to the cell. When the other officers arrived, they restrained the cellmate. I was able to unlock the cell door at which point officers restrained Mr. McClellan.

4

Olaleye Aff., ECF No. 27-5.

Braxton, who states that he was responding to Olaleye's radio call for assistance, asserts that he "entered the cell and proceeded to cuff Mr. McClellan, escorting him to medical. The nurse treated Mr. McClellan for a small laceration to the head." Braxton Aff. 2, ECF No. 27-7. Braxton further asserts that "McClellan refused to provide a written statement of the incident" but that Braxton "took photographs of Mr. McClellan . . . while in the medical unit." *Id.*

Each of the Defendants states that he did not deny Plaintiff access to medical attention and did not harass or threaten Plaintiff. Monyei Aff.; Olaleye Aff.; Braxton Aff.; Kpakiwa Aff., ECF No. 27-4. Kpakiwa and Olaleye insist that they did not have any physical contact with Plaintiff, while Braxton insists that the only contact he had with Plaintiff was in connection with handcuffing him and escorting him to medical. Olaleye Aff.; Braxton Aff.; Kpakiwa Aff.

Plaintiff's certified medical records reflect that he was seen by Registered Nurse Kathleen Doebling shortly after the altercation. Med. Recs. 3, ECF No. 27-10. According to Doebling's medical notes, Plaintiff was actively bleeding and had a wound on his left scalp that was two centimeters in length, though, at a subsequent medical appointment, the wound was described as three centimeters long. *Id.* at 3, 7. Doebling, who did not note any evidence of infection and did not observe other wounds, cleaned all visible blood from Plaintiff and applied ointment. *Id.* She noted that "Pt refused bandaging at this time but was given 2 large bandaids for later. Also given 2 cold packs for swelling." *Id.*

The following week, Plaintiff had appointments with medical providers, where he mentioned the head wound. *Id.* at 4-6, 9-10. The wound, which was described as a "superficial laceration," was cleaned and redressed. *Id.* Plaintiff was given Motrin for his complaints of pain; because he reported that the wound was the consequence of hitting his head on a metal object on

the wall during the altercation, he was also given a tetanus shot. *Id.*

On August 25, 2017, Monyei filed an Application for Statement of Charges against Plaintiff. Stmt. 1, ECF No. 27-8.³ Ultimately, the charges arising out this incident were nol prossed. *Id.* at 4.

### Plaintiff's Motion to Strike

Citing to Fed. R. Civ. P. 12(f), Plaintiff has moved to strike Olaleye's affidavit and Monyei's Application for Statement of Charges, contending that these filings "clearly contradict[]" one another, and Monyei's Statement "clearly contradicts" Monyei's affidavit. Pl.'s Mot. to Strike. Having reviewed these filings, I cannot discern any contradiction. In any event, even if discrepancies were apparent, that would not amount to a reason to strike under Rule 12(f), which provides that "redundant, immaterial, impertinent, or scandalous matter" may be stricken. Where evidence is inconsistent, it is for the jury (or the judge as the factfinder, where a jury is not requested) to determine which to believe. Therefore, Plaintiff's Motion to Strike is denied.

### STANDARD OF REVIEW

Defendants' dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve

---

³ In the Application for Statement of Charges, Monyei states that he went to the cell, told Plaintiff and his cellmate that they had to move, and informed them that he would find whatever instrument they were using to open their cell door. Stmt. 2. Plaintiff "reluctantly agreed to the search," yet as Monyei stepped into the cell, Plaintiff attacked him by throwing a punch to his face. *Id.* Although the details about the intended search for the instrument are absent from the affidavits, such details are not incompatible with the events as described in the affidavits.

factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendants have filed and relied on declarations and exhibits attached to their dispositive Motion, and Plaintiff was notified of the dispositive motion, it shall be treated as one for summary judgment. *See id.*

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).

When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 381 (2007). Moreover, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). Because Plaintiff is proceeding without an attorney, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the Court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## DISCUSSION

Plaintiff does not explain the nature of his claims or otherwise specify a federal cause of action. As best I can discern, his Complaint presents claims under 42 U.S.C. § 1983 that Defendants violated his constitutional rights. A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). It protects the rights of postconviction detainees. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal

adjudication of guilt in accordance with due process of law.") (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)). However, the Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees, such as McClellan. *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992). The constitutional protections afforded to a pretrial detainee under the Fourteenth Amendment are similar to those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill*, 979 F.2d at 991 (4th Cir. 1992). The question is whether the conditions amount to punishment of the pretrial detainee, because due process proscribes punishment of a detainee before proper adjudication of guilt. *Bell*, 441 U.S. at 535. However, "not every inconvenience that is encountered during pre-trial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

Thus, the Fourteenth Amendment's Due Process Clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, ___U.S. ___, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). "[T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id*. It is enough that "a pretrial detainee show that the 'force purposely or knowingly used against him was objectively unreasonable,' regardless of an officer's state of mind." *Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016) (quoting *Kingsley*, 135 S. Ct. at 2472). Pursuant to *Kingsley,* this Court must consider whether, under the "facts and circumstances" of this particular case, and from the "perspective of a reasonable officer on the scene," the force used against Plaintiff was objectively excessive. *Kingsley*, 135 S. Ct. at 2473.

**A. Officer Monyei**

Monyei and Plaintiff present conflicting versions of the altercation, with each alleging that the other initiated the assault without provocation. Monyei submitted an affidavit in support of his version of events. Although Plaintiff's Complaint and Amended Complaint were not verified under penalty of perjury, Plaintiff's Opposition—in which he stated that he "clearly showed that [he] was not a threat" to Monyei and Olaleye—was sworn. Pl.'s Opp'n 3. If Monyei used physical force against Plaintiff when Plaintiff posed no threat to him, his use of force was objectively unreasonable. In light of this dispute of material facts and the liberal construction afforded to Plaintiff as a *pro se* litigant, the Court will deny the Motion for Summary Judgment as to Monyei. The issue requires credibility determinations not appropriate for resolution on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B. Officer Olaleye**

    1. Harassment

Plaintiff makes nonspecific allegations that Olaleye harassed and antagonized him, Am. Compl. 3, a claim which Olaleye denies, Olaleye Aff. 2. Plaintiff does not allege that Olaleye ever physically harmed him. Mere verbal harassment does not amount to a constitutional violation. *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *see also Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995) ("[N]ot all undesirable behavior by state actors is unconstitutional."). Thus, Plaintiff's allegation that Olaleye verbally harassed him fails to state a claim.

    2. Failure to Protect

As to Olaleye's role in Plaintiff's altercation with Monyei, Plaintiff contends that Olaleye closed the cell door before calling for staff assistance to break up the altercation, thereby allowing

Monyei to continue to assault Plaintiff. Am. Compl. 3-4. In his Opposition, Plaintiff argues that this was a violation of DOC policy. Pl.'s Opp'n 2. He also argues that it was a violation of DOC policy for Olaleye not to call his supervisor as soon as Plaintiff became non-compliant with an officer's orders. *Id.* at 3.

However, a failure to follow directives or regulations does not, in and of itself, amount to a constitutional violation. *See Roberts v. City of Troy*, 773 F.2d 720, 726 (6th Cir. 1985) ("The mere failure to comply with a state regulation is not a constitutional violation." (citing *Davis v. Scherer*, 468 U.S. 183 (1984)); *Williams v. Maynard*, No. ELH-13-2931, 2015 WL 1138263, at *8 (D. Md. Mar. 12, 2015) (stating that "[r]egardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met" (citing *Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)). And, while it is possible that a violation of institutional regulations alone could give rise to some kind of state action, it does not amount to a federal claim. Therefore, Olaleye's alleged violations of DOC policy do not form the basis of a proper § 1983 claim in and of themselves, but only if in doing so, Olaleye's conduct violated Plaintiff's constitutional rights.

Thus, Plaintiff can only succeed on his claim if he can demonstrate that Olaleye's action in closing the cell door during the altercation before calling for staff assistance violated Plaintiff's constitutional rights. I will construe this as a claim that Olaleye failed to protect Plaintiff from Monyei. A failure-to-protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment. The same standards apply as for an Eighth Amendment claim brought by a convicted prisoner. *See, e.g., Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *Kamara v. Prince George's County Dep't of Corr.*, No. ELH-15-3952, 2017 WL 735549, at *12 (Feb. 24, 2017) (collecting cases).

To establish a constitutional violation for failure to protect, the prisoner must satisfy a two-part test, consisting of an objective and a subjective component. *See Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury,' " *id.* (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 733 (4th Cir. 2010)), or a "sufficiently imminent danger[ ]," *Helling v. McKinney*, 509 U.S. 25, 34 (1993). Subjectively, a prisoner must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish a culpable state of mind, there must be "evidence suggesting that the prison official had actual knowledge of an excessive risk to the [inmate's or detainee's] safety." *Danser*, 772 F.3d at 347. That is, there must be evidence that prison officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that the officials drew the inference. *Raynor*, 817 F.3d 123, 128 (4th Cir. 2016).

However, actual knowledge of a substantial risk does not necessarily result in liability. If a prison official responded reasonably to a risk, he "may be found free from liability . . . ." *Farmer*, 511 U.S. at 844. Thus, for example, "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128; *see also Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) (finding no deliberate indifference where unarmed prison officials did not intervene in an armed attack immediately but called for backup). On the other hand, the failure to take any action "to stop an ongoing assault on a prisoner can amount to deliberate indifference." *Raynor*, 817 F.3d at 128; *see also Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003). If the officer "had a reasonable opportunity to act and 'simply refused to do so,' " the officer's

failure to intervene during an assault may give rise to liability under § 1983. *Raynor*, 817 F.3d at 128 (citation omitted).

Here, both Plaintiff and Olaleye agree that Olaleye closed the cell door to the altercation between Plaintiff and Monyei and did so before calling for additional assistance. Am. Compl. 4; Olaleye Aff. 2. However, Olaleye asserts that he closed the cell door "to prevent the escalation of the fight and curtail [Plaintiff's] cellmate from joining the fight." Olaleye Aff. 2. Plaintiff's Opposition supports Olaleye's suggestion that Plaintiff's cellmate attempted to become involved in the altercation. *See* Pl.'s Opp'n 4 (contending that the cellmate's actions were not "threatening," but acknowledging that the cellmate was "showing concern" for Plaintiff, suggesting that cellmate was trying to enter the cell to intervene or to prevent Olaleye from entering to assist Monyei). Further, Olaleye asserts, and Plaintiff does not offer evidence to dispute,[4] that after shutting the door, he radioed for backup assistance. Olaleye Aff. 2. In sum, although Olaleye closed the door to the altercation, the undisputed evidence is that he did so to prevent the fight from escalating further and that he called for additional assistance to break up the altercation. On these undisputed facts, Plaintiff cannot demonstrate that Olaleye responded unreasonably to the risk of harm that Plaintiff faced, and Olaleye is entitled to summary judgment.

## C. Captain Braxton

Plaintiff contends that, after handcuffing and removing Plaintiff from his cell, Braxton was "hostile" and "aggressive" towards Plaintiff. Am. Compl. 4. He further argues that Braxton denied his request to be taken to a hospital for medical treatment, noting, for the first time in his Opposition, that DOC regulations state that inmates who suffer head wounds are to be taken to a

---

[4] In his Complaint, Plaintiff stated that he "believe[d] the hall officer heard the commotion and called the signal for staff assistance," Compl. 4, but this is unsupported speculation.

13

hospital for evaluation. *Id.*; Pl.'s Opp'n 4. As stated in the preceding section, neither harassment nor, standing alone, the violation of an institutional regulation amounts to a constitutional violation.

However, setting aside the claim of a regulation violation, the decision not to send an inmate to an outside hospital could amount to a constitutional claim of deliberate indifference to medical needs depending upon the nature of the inmate's medical condition. To make out a prima facie claim of deliberate indifference to serious medical needs, a pretrial detainee must allege "that the defendants actually knew of and disregarded a substantial risk of serious injury to [him] or that they actually knew of and ignored [his] serious need for medical care." *Johnson v. Fields*, 616 F. App'x 599, 600 (4th Cir. 2015) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001)). "In order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

Here, although Plaintiff alleges, without evidence in support, that Braxton "denied [Plaintiff's] request for outside medical attention," Am. Compl. 4, the record demonstrates that Braxton escorted Plaintiff to institutional medical providers for evaluation and treatment, Braxton Aff.; Med. Recs. 2-3. Thus, while Braxton did not grant Plaintiff's request that he be sent to the hospital, he clearly was not indifferent to Plaintiff's injury because he ensured that Plaintiff was evaluated by a medical professional, who had the expertise to determine whether outside assessment was required. And, Plaintiff does not contend that Nurse Doebling, who evaluated Plaintiff after Braxton brought him to the medical department, believed that Plaintiff needed to go to the hospital. Indeed, Plaintiff does not contend that Doebling erred in failing to send him to a hospital. Thus, Plaintiff fails to demonstrate that Braxton violated his constitutional rights by

being deliberately indifferent to his medical needs, where Braxton ensured that Plaintiff received medical evaluation and treatment, even if it was not the specific evaluation that Plaintiff desired. Therefore, Braxton is also entitled to summary judgment.

**D. Sergeant Kpakiwa**

Plaintiff alleges that, after he was returned to his cell following his medical evaluation, Kpakiwa failed to ensure that Plaintiff received a shower and did not take a statement from Plaintiff about the incident. Compl. 4. Plaintiff further alleges that he told Kpakiwa that he "need[ed] to go back to medical [because his] head was in pain and [he] needed [a] bandage," but Kpakiwa told Plaintiff that he had already been to the medical department. *Id.*

For the first time in his Opposition, Plaintiff contends that Kpakiwa is liable for Plaintiff's altercation with Monyei because Kpakiwa "was well aware of the situation but chose to ignore the policy and procedure of the use of force manual, and told [Monyei and Olaleye] to handle the situation." Pl.'s Opp'n 4.

1. Supervisory Liability

It is well established that the doctrine of respondeat superior does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;

15

(2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Although Plaintiff asserts (in conclusory fashion) in his sworn Opposition that Kpakiwa "was well aware of the situation," Plaintiff states elsewhere that Olaleye did not call for staff assistance until the altercation already had began. Plaintiff does not allege that Monyei planned in advance to use force and that, if he did, Kpakiwa was aware of such a plan. Thus, "the situation" about which Plaintiff contends Kpakiwa was "well aware" appears to refer to the act of moving Plaintiff to another cell over Plaintiff's objection. *See also* Kpakiwa Aff. (stating that Olaleye informed him Plaintiff was being non-compliant with the move prior to Monyei's arrival). Even if something about this planned move violated internal policies, it did not amount to a constitutional violation, as explained in the preceding sections. In sum, although Plaintiff contends that Kpakiwa was "aware of" his subordinate's actions, there is no evidence that Kpakiwa had knowledge of the use of force or any other concerning behavior but failed to act. Accordingly, Plaintiff cannot succeed on a claim against Kpakiwa premised on supervisory liability.

2. Medical Claim

As detailed *supra*, to succeed on a medical indifference claim, Plaintiff must show that Kpakiwa knew of and ignored Plaintiff's objectively serious medical problem. Even assuming that Plaintiff has alleged a serious medical condition, Kpakiwa provided a sworn statement that he "did not deny Mr. McClellan access to medical attention." Kpakiwa Aff. 2. Plaintiff does not offer a sworn statement or other evidence to refute Kpakiwa's statement. Thus, Plaintiff's medical indifference claim against Kpakiwa must be denied.

3. Shower Claim

Plaintiff contends that Kpakiwa was "post [sic] [to] make sure [he] got [a] shower" after being evaluated at the medical department, and that Plaintiff did not receive a shower until the following day. Compl. 4. If anything, this is a conditions of confinement claim, which requires an assessment of whether or not the condition amounts to a "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) ("To establish that a particular condition or restriction of his confinement is constitutionally impermissible 'punishment,' the pretrial detainee must show either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred."). But Plaintiff fails to allege, or in the face of Kpakiwa's denial, provide evidence that he told Kpakiwa that he wanted a shower or alerted him to the deprivation, that Kpakiwa was even aware that Plaintiff did not receive a shower, or that Kpakiwa was the only individual from whom Plaintiff could have requested a shower. Further, Plaintiff received a shower the next day. Moreover, although the lack of a shower for a brief period of time could be characterized as an inconvenience, given the lack of allegations about intention or even awareness of the problem, such a minimal deficiency in care does not to the level of punishment. *See Martin*, 849 F.2d at 870 ("[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense.").

**E. Qualified Immunity**

Defendants also argue that they are entitled to summary judgment based on qualified immunity. Defs.' Mem. 10-12. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "[Q]ualified immunity protects law officers from bad guesses in gray areas and it ensures that they may be held personally liable only for transgressing bright lines." *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (internal quotation marks omitted). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter improperly is permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed. The first is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the evidence establishes a violation of a constitutional right, the second inquiry is to assess whether the right was "clearly established" at the time of the events at issue. *Id.* If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007).

Having resolved the claims against Defendants Olaleye, Braxton, and Kpakiwa in their favor, the qualified immunity analysis is necessary only as to Defendant Monyei. Construed in the light most favorable to Plaintiff, the conduct at issue is an unprovoked assault from Monyei against Plaintiff while Plaintiff was complying with instructions to move his property to move to another cell. It is well established that such an unprovoked assault violates a pretrial detainee's constitutional right to be free from excessive force, and therefore Monyei is not entitled to qualified

immunity.[5]

## CONCLUSION

For the foregoing reasons, Defendants' dispositive Motion, construed as a Motion for Summary Judgment, is granted as to Defendants Olaleye, Braxton, and Kpakiwa, and denied as to Defendant Monyei. Plaintiff's Motion to Strike is denied. The Court will appoint counsel to represent Plaintiff for the limited purpose of representing Plaintiff during the discovery and dispositive motions (if any) stages of litigation on the claim that will proceed.

| February 21, 2019 | /S/ |
|---|---|
| Date | Paul W. Grimm |
| | United States District Judge |

---

[5] Obviously, Monyei disputes the facts underpinning Plaintiff's claim of unprovoked assault and contends that Plaintiff initiated the attack, prompting Monyei's use of force to gain control over him. However, as noted, the qualified immunity analysis considers the facts in the light most favorable to the Plaintiff. *Saucier*, 533 U.S. at 201.